

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

**BUILDERS BANK,** an Illinois
State Chartered Bank,

      Plaintiff,

  -vs-

**LYMAN EATON, RICHARD TODD,
STEPHEN STOELK and
DGHD-BOREGO LLC,** an Indiana
**Limited Liability Company**

      Defendants.

:
:
:
:
:
:
:
:

**08CV1445**
**JUDGE ZAGEL**
**MAG.JUDGE COLE**



**FILED**
Mar 11, 2008
MAR 1 1 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## COMPLAINT

**NOW COMES** Plaintiff, **Builders Bank**, and complaining of Defendants,

**Lyman Eaton, Richard Todd, Stephen Stoelk** and **DGHD-Borego LLC,** an

Indiana Limited Liability Company, states as follows:

### Nature of the Action

1. This is an action on the Guarantees of a note executed by the Defendants.

## Jurisdiction

2. Jurisdiction of this Court is provided for in 28 U.S.C. § 1332(a)(1), which gives United States District Court original jurisdiction over civil actions between citizens of different states where the amount in controversy exceeds $75,000.00. Here, the citizenship of Plaintiff (Illinois) and Defendants are completely diverse (Oregon and Indiana, respectively, for Defendants). As Plaintiff seeks at least $2,500,000.00, the amount in controversy exceeds $75,000.00.

## Venue

3. Venue is proper in the Northern District of Illinois as the acts and transactions of Defendant giving rise to the cause of action occurred within the Northern District. The Northern District of Illinois is also a proper forum in light of the contractual forum selection clause contained in the parties' agreements. (See Exhibit A, page 9; Exhibit B pp. 7-8).

## Plaintiff

4. Plaintiff, **Builders Bank**, is an Illinois Banking Corporation with principal offices in Chicago, Illinois.

## Defendant

5. Defendant **Lyman Eaton** is an individual citizen of Oregon. As more fully described below, in April of 2005, Defendant executed a guaranty in favor of

Plaintiff as an inducement for Plaintiff to lend money to an entity known as Borrego Resort Holdings, LLC.

6. Defendant **Richard Todd** is an individual citizen of Oregon. As more fully described below, in April of 2005, Defendant executed a guaranty in favor of Plaintiff as an inducement for Plaintiff to lend money to an entity known as Borrego Resort Holdings, LLC.

7. Defendant **Stephen Stoelk** is an individual citizen of Oregon. As more fully described below, in April of 2005, Defendant executed a guaranty in favor of Plaintiff as an inducement for Plaintiff to lend money to an entity known as Borrego Resort Holdings, LLC.

8. Defendant **DGHD-Borego, LLC** ("Borego") is an Indiana Limited Liability Company. On information and belief, Plaintiff alleges that Defendant Borego has principal offices in Indianapolis, Indiana. Borego also executed a guaranty in favor of Plaintiff as an inducement for Plaintiff to lend money to an entity known as Borrego Resort Holdings, LLC.

**Cause of Action**

9. On April 14, 2005, an Oregon Limited Liability Company named **Borrego Resort Holdings, LLC** ("Borrego Resort") executed and delivered to Plaintiff a mortgage note in the original principal amount of $2,500,000.00. (See Exhibit A attached).

10. Concurrently with the execution of the Note referred to in paragraph 9, and as an inducement to make the loan to Borrego Resort, Defendants Richard Todd and Stephen Stoelk executed and delivered to Plaintiff a guaranty of payment and performance of the obligations of Borrego Resort under the Note. (See Exhibit B attached).

11. The maturity date of the Note was extended numerous times. (See Group Exhibit C).

12. In February 2006, in return for the extension of the maturity date, an equity investor, DGHD-Borego, LLC, and one of its owners, Lyman Eaton, guaranteed the obligations of Borrego Resort under the note. (See Exhibit D).

13. Each of the guarantees contained language in bold 12-point type, fixing the situs of any litigation between the parties in Chicago, Illinois, as follows:

**CONSENT TO JURISDICTION. TO INDUCE LENDER TO ACCEPT THIS GUARANTY, EACH GUARANTOR IRREVOCABLY AGREES THAT, SUBJECT TO LENDER'S SOLE AND ABSOLUTE ELECTION, ALL ACTIONS OR PROCEEDINGS IN ANY WAY ARISING OUT OF OR RELATED TO THIS GUARANTY WILL BE LITIGATED IN COURTS HAVING SITUS IN CHICAGO, ILLINOIS. EACH GUARANTOR HEREBY CONSENTS AND SUBMITS TO THE**

**JURISDICTION OF ANY COURT LOCATED WITHIN CHICAGO, ILLINOIS, WAIVES PERSONAL SERVICE OF PROCESS AND AGREES THAT ALL SUCH SERVICE OF PROCESS MAY BE MADE BY REGISTERED MAIL DIRECTED TO SUCH GUARANTOR AT THE ADDRESS STATED HEREIN AND SERVICE SO MADE WILL BE DEEMED TO BE COMPLETED UPON ACTUAL RECEIPT.**

(See Exhibit B, par. 18; Exhibit D, par. 18)

14.  Additionally, each guarantee contained language requiring the respective guarantors to pay the reasonable attorneys' fees and costs associated with collection efforts under the guaranty.  (See Exhibit B, par. 10; Exhibit D, par. 10).

15.  Finally, each guaranty contained language in bold 12-point type whereunder each guarantor waived a jury trial and certain counterclaims. (See Exhibit B, par. 19; Exhibit D, par. 19).

16.  The final extension Plaintiff was willing to agree to for the maturity date of the Note was March 5, 2008.  (See Exhibit E).

17.  As of January 17, 2008, Borrego Resort was in default for failure to make its monthly payments.  Accordingly, Plaintiff sent notice of the default to Borrego Resort on January 17, 2008.  (See Exhibit F).  The notice also put Defendant guarantors on notice of the default.

18.  On February 4, 2008, Plaintiff accelerated the loan, as was its right under paragraph 6 of the Note.  (See Exhibit A, p. 7).  A copy of the acceleration letter is attached as Exhibit G.

19. Thereafter, Plaintiff discovered that on June 25, 2007, Borrego Resort had allowed a lien to be placed on the property securing the Note without Plaintiff's permission or knowledge, a circumstance which had been defined as an event of default in the Borrego Resort Note. (See Exhibit A, par. 5.2). Accordingly, on February 19, 2008, Plaintiff sent Borrego Resort a notice that Plaintiff would consider the default to have occurred on the date of the prohibited transfer (June 25, 2007). See Exhibit H.

20. As of March 1, 2008, the amounts due on the Note (and therefore the guaranties) are as follows:

| | |
|---|---:|
| Unpaid principal | $2,245,795.65 |
| Loan Rate Interest | 29,104.98 |
| Default Rate Interest | 107,886.11 |
| Late Fee on Payments | 3,402.04 |
| Late Fee on Accelerated Principal | 112,289.78 |
| Attorney's Fees | 2,500.00 |
| Total | $2,500,978.56 |

Per Diem = $1,310.05

21. Although Plaintiff has demanded of Defendants that they honor their commitment under their respective guaranties, Defendants have refused and continue to refuse to do so.

WHEREFORE, Plaintiff, **Builders Bank**, prays that:

a.  This Court enter judgment in its favor and against Defendants, **Lyman Eaton, Richard Todd, Stephen Stoelk** and **DGHD-Borego LLC**, an Indiana Limited Liability Company, for the sum of $2,500,978.56 plus all costs and attorneys' fees incurred by Plaintiff in bringing this action, and all additional per diem interest from March 1, 2008, through the date of judgment; and

b.  This Court award such other and further relief it deems meet under the circumstances.

Respectfully submitted,

By: _____

Richard D. Grossman
Attorney for Plaintiff

Richard D. Grossman
**Law Offices of Richard D. Grossman**
225 West Wacker Drive
20th Floor
Chicago, IL  60606
(312) 750-9308

7

# EXHIBIT A

## PROMISSORY NOTE SECURED BY DEED OF TRUST

$2,500,000.00

April 14, 2005
Chicago, Illinois

1.   **Agreement to Pay.**   FOR VALUE RECEIVED, BORREGO RESORT HOLDINGS, LLC, an Oregon limited liability company (**"Borrower"**), hereby promises to pay to the order of BUILDERS BANK, an Illinois banking corporation (**"Lender"**), the principal sum of Two Million Five Hundred Thousand and 00/100 Dollars ($2,500,000.00) (**"Loan"**) at the place and in the manner hereinafter provided, together with interest thereon at the rate or rates described below (the **"Interest Rate"**), and any and all other amounts which may be due and payable hereunder from time to time.

2.   **Interest Rate.**

   2.1   **Interest Prior to Default.**

      Interest shall accrue on the outstanding principal balance of this Note from the date hereof through **October 14, 2005** (**"Original Maturity Date"**), at an annual rate equal to two percent (2.00%), plus the Prime Rate (**"Loan Rate"**). Changes in the rate of interest to be charged hereunder based on the Prime Rate shall take effect immediately upon the occurrence of any change in the Prime Rate. Notwithstanding the foregoing, the Loan Rate shall never be less than seven and three quarters percent (7.75%).

      **"Prime Rate"** means the annual rate of interest which is the highest prime lending rate of interest most recently in effect (as published in the Money Rates Column in the Wall Street Journal). A certificate made by an officer of Lender stating the Prime Rate in effect on any given day, for the purposes hereof, shall be conclusive evidence of the Prime Rate in effect on such day. The "Prime Rate" is a base reference rate of interest adopted by Lender as a general benchmark from which Lender determines the floating interest rates chargeable on various loans to borrowers with varying degrees of creditworthiness and Borrower acknowledges and agrees that Lender has made no representations whatsoever that the "Prime Rate" is the interest rate actually offered by Lender to borrowers of any particular creditworthiness.

      Borrower may extend the term of this Note up to two (2) times for a three (3) month period for each such extension as follows:

      (A)   Provided that no Event of Default exists, or an event which with the passage of time or the giving of notice or both would constitute an Event of Default, Borrower may extend the term of this Note until January 14, 2006 (the **"First Extended Maturity Date"**) commencing on the date immediately following the Original Maturity Date only if:

(i)     Borrower provides Lender with written notice of its intent to so extend the Original Maturity Date not less than thirty (30) days prior to the Original Maturity Date (the **"First Extension Notice"**),

(ii)    concurrent with Borrower's deposit of the First Extension Notice with Lender, Borrower provides Lender with an extension fee in an amount equal to $6,250.00,

(iii)   Borrower rebalances any interest and/or tax reserve accounts maintained by Lender,

(iv)    Approval of tentative tract map,

(v)     Borrower provides Lender with payment of the "Post Closing Additional Equity" (as defined in the Deed of Trust),

(vi)    Borrower provides Lender with evidence of the satisfaction of that certain promissory note in the original principal amount of $197,000, dated March ____, 2005, executed by Stephen Stoelk and payable to the order of Michael Foster (the **"Stoelk Note"**),

(vii)   Satisfactory completion of construction drawings submitted to the City of La Quinta, and

(viii)  Issuance of "Yellow Paper" from the California Department of Real Estate.

(B)     Provided that no Event of Default exists, or an event which with the passage of time or the giving of notice or both would constitute an Event of Default, Borrower may extend the term of this Note until April 14, 2006 (the **"Second Extended Maturity Date"**; together with the Original Maturity Date and the First Extended Maturity Date are sometimes collectively referred to as the **"Maturity Date"**) commencing on the date immediately following the First Extended Maturity Date only if:

(i)     Borrower provides Lender with written notice of its intent to so extend the First Extended Maturity Date not less than thirty (30) days prior to the First Extended Maturity Date (the **"Second Extension Notice"**),

(ii)    concurrent with Borrower's deposit of the Second Extension Notice with Lender, Borrower provides Lender with an extension fee in an amount equal to $6,250.00,

(iii)   Borrower rebalances any interest and/or tax reserve accounts maintained by Lender,

(iv)    Borrower shall have applied for a construction loan from Lender for the development of the Premises,

Page 2 of 11

      (v)     final construction approval from the City of La Quinta, and

      (v)     issuance of "White Paper" from the California Department of Real Estate and approval of the final tract map for the Project by all applicable governmental authorities.

     2.2    **Interest After Default.** From and after the Maturity Date or upon the occurrence and during the continuance of an Event of Default, interest shall accrue on the balance of principal remaining unpaid during any such period at an annual rate (**"Default Rate"**) equal to five percent (5%) plus the Loan Rate; provided, however, in no event shall the Default Rate exceed the maximum rate permitted by law. The interest accruing under this paragraph shall be immediately due and payable by Borrower to the holder of this Note upon demand and shall be additional indebtedness evidenced by this Note.

     2.3    **Interest Calculation.** Interest on this Note shall be calculated on the basis of a 360-day year and the actual number of days elapsed in any portion of a month in which interest is due.

3.    **Payment Terms.**

     3.1    **Principal and Interest.** Payments of principal and interest due under this Note, if not sooner declared to be due in accordance with the provisions hereof, shall be made as follows:

      (a)     On the date the proceeds of the Loan are disbursed by Lender (**"Closing Date"**), interest on the principal balance of this Note accruing during the period commencing on the Closing Date and ending on the last day of the month in which the Closing Date occurs shall be due and payable.

      (b)     Commencing on May 5, 2005 and on the fifth (5th) day of each month thereafter (if such day is not a Business Day, then the immediately next subsequent Business Day) through and including the month in which the Maturity Date occurs, payments of interest only shall be due and payable.

      (c)     The unpaid principal balance of this Note, if not sooner paid or declared to be due in accordance with the terms hereof, together with all accrued and unpaid interest thereon and any other amounts due and payable hereunder or under any other Loan Document (as hereinafter defined), shall be due and payable in full on the Maturity Date.

      (d)     As of the date hereof, Lender will withhold a portion of the Loan in an amount, as estimated by Lender, to provide for the payment of interest on the Loan prior to the Maturity Date. Thereafter, Lender may, from time to time in its reasonable discretion, adjust the amount of such reserves as circumstances may require to cover the actual or estimated amounts required for such purposes until the Maturity Date. Provided that: (i) no Event of Default has occurred; and (ii) no event or circumstance has occurred which, with the passage of time, the giving of notice, or both, could constitute an Event of Default, Lender will disburse such

reserves to apply against the interest payment then owing under the Loan. No interest shall accrue upon the reserves held by Lender until disbursement thereof, whereupon such disbursement shall be deemed to be a disbursement of proceeds of the Loan. In case of Event of Default, Lender may use and apply the reserves, regardless of the purpose for which deposited, to cure such Event of Default or to apply as a prepayment of the Loan.

3.2    **Application of Payments**. Prior to the occurrence of an Event of Default, all payments and prepayments on account of the indebtedness evidenced by this Note shall be applied as follows: (a) first, to reasonable fees, expenses, costs and other similar amounts then due and payable to Lender, including, without limitation any prepayment premium, exit fee or late charges due hereunder, (b) second, to accrued and unpaid interest on the principal balance of this Note, (c) third, to the payment of principal due in the month in which the payment or prepayment is made, (d) fourth, to any escrows, impounds or other amounts which may then be due and payable under the Loan Documents (as hereinafter defined), (e) fifth, to any other amounts then due Lender hereunder or under any of the Loan Documents, and (f) last, to the unpaid principal balance of this Note in the inverse order of maturity. Any prepayment on account of the indebtedness evidenced by this Note shall not extend or postpone the due date or reduce the amount of any subsequent monthly payment of principal and interest due hereunder. After an Event of Default has occurred and is continuing, payments may be applied by Lender to amounts owed hereunder and under the Loan Documents in such order as Lender shall determine, in its sole discretion.

3.3    **Method of Payments**. All payments of principal and interest hereunder shall be paid by automatic debit, wire transfer, check or in coin or currency which, at the time or times of payment, is the legal tender for public and private debts in the United States of America and shall be made at such place as Lender or the legal holder or holders of this Note may from time to time appoint in the payment invoice or otherwise in writing, and in the absence of such appointment, then at the offices of Lender at 77 West Wacker Drive, 31st Floor, Chicago, Illinois 60601. Payment made by check shall be deemed paid on the date Lender receives such check; provided, however, that if such check is subsequently returned to Lender unpaid due to insufficient funds or otherwise, the payment shall not be deemed to have been made and shall continue to bear interest until collected. Notwithstanding the foregoing, the final payment due under this Note must be made by wire transfer or other final funds. If requested by Borrower, Interest, principal payments and any fees and expenses owed Lender from time to time will be deducted by Lender automatically on the due date from Borrower's account with Lender, as designated in writing by Borrower. Borrower will maintain sufficient funds in the account on the dates Lender enters debits authorized by this Note. If there are insufficient funds in the account on the date Lender enters any debit authorized by this Note, the debit will be reversed. Borrower may terminate this direct debit arrangement at any time by sending written notice to Lender at the address specified above.

3.4    **Late Charge**. If any payment of interest or principal due hereunder is not made within ten (10) days after such payment is due in accordance with the terms hereof, then, in addition to the payment of the amount so due, Borrower shall pay to Lender a

"late charge" of five cents for each whole dollar so overdue to defray part of the cost of collection and handling such late payment. Borrower agrees that the damages to be sustained by the holder hereof for the detriment caused by any late payment are extremely difficult and impractical to ascertain, and that the amount of five cents for each one dollar due is a reasonable estimate of such damages, does not constitute interest, and is not a penalty.

3.5     **Loan Fees.** In consideration of Lender's agreement to make the Loan, Borrower shall pay to Lender a non-refundable fee in the amount of **$25,000.00**, which shall be due and payable in full as a condition precedent to the first disbursement of proceeds under this Note.

3.6     **Exit Fee.** Borrower acknowledges that the Loan was made on the basis and assumption that Lender would receive the payments of principal and interest set forth herein for the full term hereof. Therefore, whenever this Note is prepaid prior to the Maturity Date, whether by the acceleration of the maturity hereof by reason of the occurrence of an Event of Default or by the voluntary prepayment by Borrower, there shall be due, in addition to the outstanding principal balance, accrued interest and other sums due hereunder, an "Exit Fee" equal to **$50,000.00**.

If, prior to the Maturity Date, Borrower elects not to pursue with Lender or Lender fails to offers to Borrower a construction loan for the re-development of the Premises based upon the "Construction Loan Terms" (defined herein), the Exit Fee will be waived by Lender. However, if, prior to the Maturity Date, Lender offers to Borrower a construction loan for the development of the Premises based upon the Construction. Loan Terms, then: (i) if Borrower declines to accept such construction financing, the Exit Fee will be due and payable to Lender as provided in this Note; or (ii) if Borrower accepts such construction financing, the Exit Fee will be due and payable to Lender as provided in this Note and credited to the loan fee due lender under the Construction Loan Terms.

The term "Construction Loan Terms" means a loan: (i) in amount not to exceed 80% of the loan-to-costs and 85% of the loan-to-value, both as determined by Lender; (ii) with a term of twelve (12) to eighteen (18) months,; (iii) with an interest rate equal to the Loan Rate with a floor of the Loan Rate at the closing of the Construction Loan; (iv) with a loan fee equal to 1% per six (6) months of loan term; and (v) containing a 100% joint and several payment and completion guaranty from Guarantor.

3.7     **Prepayment.** Provided that no Event of Default then exists, Borrower may voluntarily prepay the principal balance of this Note, in whole but not in part, at any time without a prepayment premium.

3.8     **Certain Payments.** In the event that notwithstanding the express choice of Illinois law to govern this Note, as set forth in Paragraph 8.3 hereof, the laws of the State of California are deemed to govern this Note in whole or in part, the following shall apply:

BY INITIALING BELOW, BORROWER ACKNOWLEDGES AND UNDERSTANDS THAT, PURSUANT TO THE TERMS OF THIS NOTE, BORROWER HAS AGREED THAT BORROWER SHALL BE LIABLE FOR PAYMENT OF THE EXIT FEE UPON ANY PREPAYMENT OF THE NOTE, WHETHER VOLUNTARILY OR AS A RESULT OF THE ACCELERATION OF THIS NOTE IN ACCORDANCE WITH ITS TERMS, AND THAT] BY INITIALING THIS PROVISION, BORROWER FURTHER ACKNOWLEDGES THAT LENDER'S AGREEMENT TO MAKE THE LOAN AT THE INTEREST RATES AND FOR THE TERMS SET FORTH HEREIN AND IN THE OTHER LOAN DOCUMENTS CONSTITUTES ADEQUATE AND VALUABLE CONSIDERATION, GIVEN INDIVIDUAL WEIGHT BY BORROWER FOR THIS AGREEMENT. FURTHER BORROWER HEREBY WAIVES ANY RIGHTS BORROWER MAY HAVE UNDER SECTION 2954.10 OF THE CALIFORNIA CIVIL CODE, TO THE EXTENT APPLICABLE TO THIS LOAN, AND THAT LENDER IS MAKING THE LOAN IN RELIANCE ON SUCH WAIVER:

Initials: 

4.    **Security**. This Note is secured by, among other things: (i) a Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Filing (**"Deed of Trust"**) of even date herewith made by Borrower to Lender creating a first mortgage lien on certain real property (**"Premises"**) legally described in Exhibit A attached to the Deed of Trust; (ii) an Assignment of Rents and Leases (**"Assignment"**) of even date herewith from Borrower to Lender; (iii) a Guaranty of Payment (**"Guaranty"**) of even date herewith from Richard Todd and Stephen Stoelk (collectively, **"Guarantor"**) to Lender; and (iv) an Environmental Indemnity Agreement (**"Indemnity Agreement"**) of even date herewith from Borrower and Guarantor to Lender the Deed of Trust, the Assignment, the Guaranty, the Indemnity Agreement and any other document now or hereafter given to evidence or secure payment of this Note or delivered to induce Lender to disburse the proceeds of the Loan, as such documents may hereafter be amended, restated or replaced from time to time, are hereinafter collectively referred to as the **"Loan Documents"**). Reference is hereby made to the Loan Documents (which are incorporated herein by reference as fully and with the same effect as if set forth herein at length) for a statement of the covenants and agreements contained therein, a statement of the rights, remedies, and security afforded thereby, and all matters therein contained.

5.    **Events of Default**. The occurrence of any one or more of the following events shall constitute an **"Event of Default"** under this Note:

    5.1    the failure by Borrower to pay (i) any installment of principal or interest payable pursuant to this Note on the date when due, or (ii) any other amount payable to Lender under this Note, the Deed of Trust or any of the other Loan Documents within five (5) days after the date when any such payment is due in accordance with the terms hereof or thereof; or

5.2　the occurrence of any "Event of Default" under the Deed of Trust or any of the other Loan Documents; or

5.3　the occurrence of the dissolution, insolvency, winding-up, death or legal incompetency, as applicable, of any guarantor of this Note.

6.　**Remedies.**　At the election of the holder hereof, and without notice, the principal balance remaining unpaid under this Note, and all unpaid interest accrued thereon and any other amounts due hereunder, shall be and become immediately due and payable in full upon the occurrence of any Event of Default. Failure to exercise this option shall not constitute a waiver of the right to exercise same in the event of any subsequent Event of Default. No holder hereof shall, by any act of omission or commission, be deemed to waive any of its rights, remedies or powers hereunder or otherwise unless such waiver is in writing and signed by the holder hereof, and then only to the extent specifically set forth therein. The rights, remedies and powers of the holder hereof, as provided in this Note, the Deed of Trust and in all of the other Loan Documents are cumulative and concurrent, and may be pursued singly, successively or together against Borrower, the Guarantor hereof, the Premises and any other security given at any time to secure the repayment hereof, all at the sole discretion of the holder hereof. If any suit or action is instituted or attorneys are employed to collect this Note or any part hereof, Borrower promises and agrees to pay all costs of collection, including reasonable attorneys' fees and court costs, including fees and costs incurred in bankruptcy, insolvency and/or other similar proceedings. If upon the occurrence of an Event of Default and acceleration of this Note, a tender of payment in the amount necessary to satisfy the Note in full together with all other amounts owed under the Loan Documents is made by Borrower, its successors or assigns, or by anyone on its or their behalf, or the purchaser at a foreclosure sale, such tender shall constitute an evasion of the prepayment terms hereof and shall be deemed to be a voluntary prepayment hereunder and any such prepayment, to the extent permitted by law, will be subject to the Exit Fee described in paragraph 3.6 hereof. Such premium or fee shall constitute liquidated damages payable to Lender on account of Borrower's breach of its agreements hereunder and Borrower's evasion of the prepayment provisions hereof; provided that Borrower hereby recognizes that any such prepayment will result in loss and damage to Lender through the occurrence of additional administrative expenses and Borrower acknowledges that Lender's damages for such a default will be extremely difficult and impracticable to ascertain and therefore agrees that the foregoing premium is a reasonable estimate of said loss and damage to Lender. Borrower expressly waives the provisions of any present or future statute or law which prohibits or may prohibit the collection of said premium in connection with any such acceleration.

7.　**Covenants and Waivers.**　Borrower and all others who now or may at any time become liable for all or any part of the obligations evidenced hereby, expressly agree hereby to be jointly and severally bound, and jointly and severally: (i) waive and renounce any and all homestead, redemption and exemption rights and the benefit of all valuation and appraisement privileges against the indebtedness evidenced by this Note or by any extension or renewal hereof; (ii) waive presentment and demand for payment, notices of nonpayment and of dishonor, protest of dishonor, and notice of protest; (iii) except as expressly provided in the Loan Documents, waive any and all notices in connection with the delivery and acceptance hereof and all other notices in connection with the performance, default, or enforcement of the payment hereof or hereunder; (iv) waive any and all lack of diligence and delays in the enforcement of the

payment hereof; (v) agree that the liability of each Borrower, guarantor, endorser or obligor shall be unconditional and without regard to the liability of any other person or entity for the payment hereof, and shall not in any manner be affected by any indulgence or forbearance granted or consented to by Lender to any of them with respect hereto; (vi) consent to any and all extensions of time, renewals, waivers, or modifications that may be granted by Lender with respect to the payment or other provisions hereof, and to the release of any security at any time given for the payment hereof, or any part thereof, with or without substitution, and to the release of any person or entity liable for the payment hereof; and (vii) consent to the addition of any and all other makers, endorsers, guarantors, and other obligors for the payment hereof, and to the acceptance of any and all other security for the payment hereof, and agree that the addition of any such makers, endorsers, guarantors or other obligors, or security shall not affect the liability of Borrower, any guarantor and all others now liable for all or any part of the obligations evidenced hereby. This provision is a material inducement for Lender making the Loan to Borrower.

8.    **Other General Agreements**.

8.1    The Loan is being used for solely business purposes. Borrower agrees that the Loan evidenced by this Note is an exempted transaction under the Truth In Lending Act, 15 U.S.C., §1601, et seq.

8.2    Time is of the essence hereof.

8.3    This Note is governed and controlled as to validity, enforcement, interpretation, construction, effect and in all other respects by the statutes, laws and decisions of the State of Illinois. This Note may not be changed or amended orally but only by an instrument in writing signed by the party against whom enforcement of the change or amendment is sought.

8.4    Lender shall not be construed for any purpose to be a partner, joint venturer, agent or associate of Borrower or of any lessee, operator, concessionaire or licensee of Borrower in the conduct of its business, and by the execution of this·Note, Borrower agrees to indemnify, defend, and hold Lender harmless from and against any and all damages, costs, expenses and liability that may be incurred by Lender as a result of a claim that Lender is such partner, joint venturer, agent or associate.

8.5    This Note has been made and delivered at Chicago, Illinois and all funds disbursed to or for the benefit of Borrower will be disbursed in Chicago, Illinois.

8.6    If this Note is executed by more than one party, the obligations and liabilities of each Borrower under this Note shall be joint and several and shall be binding upon and enforceable against each Borrower and their respective successors and assigns. This Note shall inure to the benefit of and may be enforced by Lender and its successors and assigns.

8.7    If any provision of this Note is deemed to be invalid by reason of the operation of law, or by reason of the interpretation placed thereon by any administrative agency or any court, Borrower and Lender shall negotiate an equitable adjustment in the provisions of the same in order to effect, to the maximum extent permitted by law, the

purpose of this and the validity and enforceability of the remaining provisions, or portions or applications thereof, shall not be affected thereby and shall remain in full force and effect.

8.8    If the interest provisions herein or in any of the Loan Documents shall result, at any time during the Loan, in an effective rate of interest which, for any month, exceeds the limit of usury or other laws applicable to the Loan, all sums in excess of those lawfully collectible as interest of the period in question shall, without further agreement or notice between or by any party hereto, be applied upon principal immediately upon receipt of such monies by Lender, with the same force and effect as though the payer has specifically designated such extra sums to be so applied to principal and Lender had agreed to accept such extra payment(s) as a premium-free prepayment. Notwithstanding the foregoing, however, Lender may at any time and from time to time elect by notice in writing to Borrower to reduce or limit the collection to such sums which, when added to the said first-stated interest, shall not result in any payments toward principal in accordance with the requirements of the preceding sentence. In no event shall any agreed to or actual exaction as consideration for this Loan transcend the limits imposed or provided by the law applicable to this transaction or the makers hereof in the jurisdiction in which the Premises are located for the use or detention of money or for forbearance in seeking its collection.

8.9    Lender may at any time assign its rights in this Note and the Loan Documents, or any part thereof and transfer its rights in any or all of the collateral, and Lender thereafter shall be relieved from all liability with respect to such collateral. In addition, Lender may at any time sell one or more participations in this Note. Borrower may not assign its interest in this Note, or any other agreement with Lender or any portion thereof, either voluntarily or by operation of law, without the prior written consent of Lender.

9.    **Notices.**  All notices required under this Note will be in writing and will be transmitted in the manner and to the addresses or facsimile numbers required by the Deed of Trust, or to such other addresses or facsimile numbers as Lender and Borrower may specify from time to time in writing.

10.    **Consent to Jurisdiction.**  TO INDUCE LENDER TO ACCEPT THIS NOTE, BORROWER IRREVOCABLY AGREES THAT, SUBJECT TO LENDER'S SOLE AND ABSOLUTE ELECTION, ALL ACTIONS OR PROCEEDINGS IN ANY WAY ARISING OUT OF OR RELATED TO THIS NOTE WILL BE LITIGATED IN COURTS HAVING SITUS IN CHICAGO, ILLINOIS. BORROWER HEREBY CONSENTS AND SUBMITS TO THE JURISDICTION OF ANY COURT LOCATED WITHIN COOK COUNTY, ILLINOIS; WAIVES PERSONAL SERVICE OF PROCESS UPON BORROWER, AND AGREES THAT ALL SUCH SERVICE OF PROCESS MAY BE MADE BY REGISTERED MAIL DIRECTED TO BORROWER AT THE ADDRESS STATED IN THE DEED OF TRUST AND SERVICE SO MADE WILL BE DEEMED TO BE COMPLETED UPON ACTUAL RECEIPT.

11. _Waiver of Jury Trial_. BORROWER AND LENDER (BY ACCEPTANCE OF THIS NOTE), HAVING BEEN REPRESENTED BY COUNSEL, EACH KNOWINGLY AND VOLUNTARILY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS (a) UNDER THIS NOTE OR ANY RELATED AGREEMENT OR UNDER ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION WITH THIS NOTE OR (b) ARISING FROM ANY BANKING RELATIONSHIP EXISTING IN CONNECTION WITH THIS NOTE, AND AGREES THAT ANY SUCH ACTION OR PROCEEDING WILL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY. BORROWER AGREES THAT IT WILL NOT ASSERT ANY CLAIM AGAINST LENDER ON ANY THEORY OF LIABILITY FOR SPECIAL, INDIRECT, CONSEQUENTIAL, INCIDENTAL OR PUNITIVE DAMAGES.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK-SIGNATURE PAGE FOLLOWS]

**IN WITNESS WHEREOF**, Borrower has executed and delivered this Promissory Note Secured by Deed of Trust as of the day and year first written above.

**BORROWER:**

**BORREGO RESORT HOLDINGS, LLC,**
**an Oregon limited liability company**

By: _____

Name: _____RICHARD TODD_____

Title: _____MANAGING MEMBER_____

**EXHIBIT B**

## GUARANTY OF PAYMENT

THIS GUARANTY OF PAYMENT (this "**Guaranty**") is dated as of April 14, 2005 (the "**Effective Date**") by RICHARD TODD AND STEPHEN STOELK (each, a "**Guarantor,**" and collectively the "**Guarantors**"), jointly and severally for the benefit of **BUILDERS BANK**, an Illinois banking corporation ("**Lender**").

## R E C I T A L S:

A.    Lender has agreed to loan the principal amount of Two Million Five Hundred Thousand and 00/100 Dollars ($2,500,000.00) ("**Loan**") to BORREGO RESORT HOLDINGS, LLC, a Oregon limited liability company ("**Borrower**").

B.    As a condition precedent to Lender's extension of the Loan to Borrower and in consideration therefor, Lender has required the execution and delivery of (i) this Guaranty by Guarantor, (ii) that certain Promissory Note of even date herewith (as amended from time to time, "**Note**") made by Borrower payable to Lender to evidence the Loan, (iii) that certain Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Filing of even date herewith (as amended from time to time, "**Deed of Trust**") from Borrower to First American Title Insurance Company, as trustee for the benefit of Lender encumbering the real property, improvements and personalty described therein ("**Premises**"), and (iv) the other Loan Documents (as defined in the Note).

C.    Each of the Guarantors are a member of Borrower and, having a financial interest in the Premises, has agreed to execute and deliver this Guaranty to Lender.

NOW, **THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which hereby are acknowledged, each of the Guarantors hereby agrees as follows:

1.    **Guaranty.**    Each of the Guarantors hereby unconditionally, absolutely and irrevocably guaranties to Lender, the punctual payment and performance when due, whether at stated maturity or by acceleration or otherwise, of the indebtedness and other obligations of Borrower to Lender evidenced by the Note and any other amounts that may become owing by Borrower under the Loan Documents (such indebtedness, obligations and other amounts are hereinafter referred to as "**Payment Obligations**"). This Guaranty is a present and continuing guaranty of payment and not of collectibility, and Lender shall not be required to prosecute collection, enforcement or other remedies against Borrower or any other guarantor of the Payment Obligations, or to enforce or resort to any collateral for the repayment of the Payment Obligations or other rights or remedies pertaining thereto, before calling on any Guarantor for payment. If for any reason Borrower shall fail or be unable to pay, punctually and fully, any of the Payment Obligations, Guarantors shall pay such obligations to Lender in full immediately upon demand. One or more successive actions may be brought against any or all of the Guarantors, as often as Lender deems advisable, until all of the Payment Obligations are paid and performed in full.    The Payment Obligations, together with all other payment and performance obligations of Guarantors hereunder are referred to herein as the "**Obligations**".

2.    **Representations and Warranties**. The following shall constitute representations and warranties of each of the Guarantors and each of the Guarantors hereby acknowledges that Lender intends to make the Loan in reliance thereon:

a.    No Guarantor is in default and no event has occurred which, with the passage of time and/or the giving of notice, would constitute a default under any agreement to which any Guarantor is a party, the effect of which will impair performance by such Guarantor of his, her or its obligations under this Guaranty. Neither the execution and delivery of this Guaranty nor compliance with the terms and provisions hereof will, to the best of such Guarantor's knowledge, violate any applicable law, rule, regulation, judgment, decree or order, or will conflict with or result in any breach of any of the terms, covenants, conditions or provisions of any indenture, Deed of Trust, deed of trust, instrument, document, agreement or contract of any kind that creates, represents, evidences or provides for any lien, charge or encumbrance upon any of the property or assets of any of the Guarantors, or any other indenture, Deed of Trust, deed of trust, instrument, document, agreement or contract of any kind to which any Guarantor is a party or to which any Guarantor or the property of such Guarantor may be subject.

b.    There are no litigation, arbitration, governmental or administrative proceedings, actions, examinations, claims or demands pending, or to any Guarantor's knowledge, threatened that could adversely affect performance by any Guarantor of his, her or its obligations under this Guaranty.

c.    Neither this Guaranty nor any statement or certification as to facts previously furnished or required herein to be furnished to Lender by any Guarantor, contains any material inaccuracy or untruth in any representation, covenant or warranty or omits to state a fact material to this Guaranty.

d.    As the Members of Borrower, each Guarantor will derive substantial benefit, directly or indirectly, from the making of the Loan to Borrower and from making of this Guaranty by such Guarantor.

e.    This Guaranty is executed at the request of Borrower, Lender has made no representation to any Guarantor as to the creditworthiness of Borrower and each Guarantor assumes the responsibility for keeping informed of the financial condition of Borrower and all other circumstances the risk of nonpayment or nonperformance of the Payment Obligations,  and each Guarantor agrees that Lender shall have no duty to advise such Guarantor of any information known to Lender regarding any such financial conditions or circumstances.

3.    **Continuing Guaranty**.    Each Guarantor agrees that performance of the Obligations by Guarantors shall be a primary obligation, shall not be subject to any counterclaim, set-off, abatement, deferment or defense based upon any claim that any Guarantor may have against Lender, Borrower, any other guarantor of the Obligations or any other person or entity, and shall remain in full force and effect without regard to, and shall not be released, discharged or affected in any way by, any circumstance or condition (whether or not such Guarantor shall have any knowledge thereof), including without limitation:

2

a.      any lack of validity or enforceability of any of the Loan Documents;

b.      any termination, amendment, modification or other change in any of the Loan Documents, including, without limitation, any modification of the interest rate(s) described therein;

c.      any furnishing, exchange, substitution or release of any collateral securing repayment of the Loan, or any failure to perfect any lien in such collateral;

d.      any failure, omission or delay on the part of Borrower, any Guarantor, any other guarantor of the Obligations or Lender to conform or comply with any term of any of the Loan Documents or any failure of Lender to give notice of any Event of Default (as defined in the Note);

e.      any waiver, compromise, release, settlement or extension of time of payment or performance or observance of any of the obligations or agreements contained in any of the Loan Documents;

f.      any action or inaction by Lender under or in respect of any of the Loan Documents, any failure, lack of diligence, omission or delay on the part of Lender to perfect, enforce, assert or exercise any lien, security interest, right, power or remedy conferred on it in any of the Loan Documents, or any other action or inaction on the part of Lender;

g.      any voluntary or involuntary bankruptcy, insolvency, reorganization, arrangement, readjustment, assignment for the benefit of creditors, composition, receivership, liquidation, marshalling of assets and liabilities or similar events or proceedings with respect to Borrower, any Guarantor or any other guarantor of the Obligations, as applicable, or any of their respective property or creditors, or any action taken by any trustee or receiver or by any court in any such proceeding;

h.      any merger or consolidation of Borrower into or with any entity, or any sale, lease or transfer of any of the assets of Borrower, any Guarantor or any other guarantor of the Obligations to any other person or entity;

i.      any change in the ownership of Borrower or any change in the relationship between Borrower, any Guarantor or any other guarantor of the Obligations, or any termination of any such relationship;

j.      any release or discharge by operation of law of Borrower, any Guarantor or any other guarantor of the Obligations from any obligation or agreement contained in any of the Loan Documents;

k.      any defense arising out of the application by Borrower of proceeds of the Loan for purposes other than the purposes represented by Borrower to Lender; or

l.      any other occurrence, circumstance, happening or event, whether similar or dissimilar to the foregoing and whether foreseen or unforeseen, which otherwise might

3

constitute a legal or equitable defense or discharge of the liabilities of a guarantor or surety or which otherwise might limit recourse against Borrower or any Guarantor to the fullest extent permitted by law.

4.    **Waivers**. Each Guarantor expressly and unconditionally waives (i) notice of any of the matters referred to in Section 3/4 above, (ii) all notices which may be required by statute, rule of law or otherwise, now or hereafter in effect, to preserve intact any rights against Guarantor, including, without limitation, notice of acceptance of this Guaranty, any demand, presentment and protest, notice of protest, notice of dishonor, proof of notice of non-payment under any of the Loan Documents and notice of any Event of Default or any failure on the part of Borrower, any Guarantor or any other guarantor of the Obligations to perform or comply with any covenant, agreement, term or condition of any of the Loan Documents, (iii) any right to the enforcement, assertion or exercise against Borrower, any Guarantor or any other guarantor of the Obligations of any right or remedy conferred under any of the Loan Documents, (iv) any requirement of diligence on the part of any person or entity, (v) to the fullest extent permitted by law and except as otherwise expressly provided in this Guaranty or the other Loan Documents, any claims based on allegations that Lender has failed to act in a commercially reasonable manner or failed to exercise Lender's so-called obligation of good faith and fair dealing, (vi) any requirement to exhaust any remedies or to mitigate the damages resulting from any default under any of the Loan Documents, (vii) any notice of any sale, transfer or other disposition of any right, title or interest of Lender under any of the Loan Documents; (viii) any right to require Lender to proceed against Borrower, to proceed against any other person, or to proceed against or exhaust any security held from Borrower or any other person; (ix) any right to have the property of Borrower first applied to discharge the Obligations, allowing Lender, at its option, to exercise any right or remedy it may have against Borrower or any security held by Lender; (x) any defense based upon Lender's failure to disclose to any Guarantor any information concerning Borrower's financial condition or any other circumstances bearing on Borrower's ability to pay and perform its obligations under any of the Loan Documents; (x) any defense based upon any statute or rule of law which provides that the obligations of a surety may be neither larger in amount nor in any other respects more burdensome than that of a principal; and (xi) the benefit of or right to assert any statute of limitations affecting the liability of any Guarantor hereunder or the enforcement thereof, to the extent permitted by law, and any part payment by Borrower or other circumstance which operates to toll any statute of limitations as to Borrower shall also serve to toll the statute of limitations as to any Guarantor.

5.    **Subordination**. Each Guarantor agrees that any and all present and future debts and obligations of Borrower to such Guarantor hereby are subordinated to the claims of Lender nd hereby are assigned by Guarantors to Lender as security for the Obligations and Guarantor's obligations under this Guaranty.

6.    **Subrogation Waiver**. Until the Obligations are paid in full and all periods under applicable bankruptcy law for the contest of any payment by Guarantors or Borrower as a preferential or fraudulent payment have expired, each Guarantor knowingly, and with advice of counsel, waives, relinquishes, releases and abandons all rights and claims to indemnification, contribution, reimbursement, subrogation and payment which any Guarantor may now or hereafter have by and from Borrower and the successors and assigns of Borrower, for any payments made by such Guarantor to Lender, including, without limitation, any rights which

4

might allow Borrower, Borrower's successors, a creditor of Borrower, or a trustee in bankruptcy of Borrower to claim in bankruptcy or any other similar proceedings that any payment made by Borrower or Borrower's successors and assigns to Lender was on behalf of or for the benefit of any Guarantor and that such payment is recoverable by Borrower, a creditor or trustee in bankruptcy of Borrower as a preferential payment, fraudulent conveyance, payment of an insider or any other classification of payment which may otherwise be recoverable from Lender.

7.    **Reinstatement**.  The obligations of Guarantors pursuant to this Guaranty shall continue to be effective or automatically be reinstated, as the case may be, if at any time payment of any of the Obligations or Guarantors' obligations under this Guaranty rescinded or otherwise must be restored or returned by Lender upon the insolvency, bankruptcy, dissolution, liquidation or reorganization of any Guarantor or Borrower or otherwise, all as though such payment had not been made.

8.    **Financial Statements**.  Each Guarantor represents and warrants to Lender that (a) the financial statements of such Guarantor previously submitted to Lender are true, complete and correct in all material respects, disclose all actual and contingent liabilities, and fairly present the financial condition of such Guarantor, and do not contain any untrue statement of a material fact or omit to state a fact material to the financial statements submitted or this Guaranty and (b) no material adverse change has occurred in the financial statements from the dates thereof until the Effective Date.  Each Guarantor shall furnish to Lender annual financial statements for each calendar year no later than ninety (90) days after the end of such years certified by such Guarantor as true, complete and correct and otherwise in a form substantially similar to the form of financial statements previously submitted by such Guarantor to Lender, unless otherwise approved in writing by Lender.

9.    **Transfers, Sales, Etc.**  None of the Guarantors shall sell, lease, transfer, convey or assign any of his assets, unless (a) if such Guarantor is an individual, such sale, lease, transfer, conveyance or assignment is of a non-material asset of such Guarantor or (b) if such Guarantor is a corporation, partnership or other entity, such sale, lease, transfer, conveyance or assignment is performed in the ordinary course of its business consistent with past practices, and will not have a material adverse effect on the business or financial condition of such Guarantor or its ability to perform its obligations hereunder.  In addition, none of the Guarantors shall become a party to any merger or consolidation, nor, except in the ordinary course of its business consistent with past practices, acquire all or substantially all of the assets of, a controlling interest in the stock of, or a partnership or joint venture interest in, any other entity.

10.    **Enforcement Costs**.  If: (a) this Guaranty, is placed in the hands of one or more attorneys for collection or is collected through any legal proceeding; (b) one or more attorneys is retained to represent Lender in any bankruptcy, reorganization, receivership or other proceedings affecting creditors' rights and involving a claim under this Guaranty, or (c) one or more attorneys is retained to represent Lender in any other proceedings whatsoever in connection with this Guaranty,  then Guarantors shall pay to Lender upon demand all reasonable fees, costs and expenses incurred by Lender in connection therewith, including, without limitation, reasonable attorney's fees, court costs and filing fees (all of which are referred to herein as "**Enforcement Costs**"), in addition to all other amounts due hereunder.

11.    **Successors and Assigns; Joint and Several Liability**. This Guaranty shall inure to the benefit of Lender and its successors and assigns. This Guaranty shall be the joint and several undertaking of each of the Guarantors, and shall be binding on each Guarantor and the respective heirs, legatees, successors and assigns of each Guarantor. Regardless of whether this Guaranty is executed by more than one person, it is agreed that the undersigned's liability hereunder is several and independent of any other guarantees or other obligations at any time in effect with respect to the Obligations or any part thereof and that Guarantor's liability hereunder may be enforced regardless of the existence, validity, enforcement or non-enforcement of any such other guarantees or other obligations.

12.    **No Waiver of Rights**. No delay or failure on the part of Lender to exercise any right, power or privilege under this Guaranty or any of the other Loan Documents shall operate as a waiver thereof, and no single or partial exercise of any right, power or privilege shall preclude any other or further exercise thereof or the exercise of any other power or right, or be deemed to establish a custom or course of dealing or performance between the parties hereto. The rights and remedies herein provided are cumulative and not exclusive of any rights or remedies provided by law. No notice to or demand on any Guarantor in any case shall entitle any Guarantor to any other or further notice or demand in the same, similar or other circumstance.

13.    **Modification**. The terms of this Guaranty may be waived, discharged, or terminated only by an instrument in writing signed by the party against which enforcement of the change, waiver, discharge or termination is sought. No amendment, modification, waiver or other change of any of the terms of this Guaranty shall be effective without the prior written consent of Lender.

14.    **Joinder**. Any action to enforce this Guaranty may be brought against any Guarantor without any reimbursement or joinder of Borrower, any other Guarantor or any other guarantor of the Obligations in such action.

15.    **Severability**. If any provision of this Guaranty is deemed to be invalid by reason of the operation of law, or by reason of the interpretation placed thereon by any administrative agency or any court, Guarantors and Lender shall negotiate an equitable adjustment in the provisions of the same in order to effect, to the maximum extent permitted by law, the purpose of this Guaranty and the validity and enforceability of the remaining provisions, or portions or applications thereof, shall not be affected thereby and shall remain in full force and effect.

16.    **Applicable Law**. This Guaranty is governed as to validity, interpretation, effect and in all other respects by laws and decisions of the State of Illinois.

17.    **Notice**. All notices, communications and waivers under this Guaranty shall be in writing and shall be (a) delivered in person or (b) mailed, postage prepaid, either by registered or certified mail, return receipt requested, or (c) by overnight express carrier, addressed in each case as follows:

To Lender:                                     BUILDERS BANK
                                               77 West Wacker Drive, Suite 3100

6

|                    | Chicago, Illinois 60601 |
|--------------------|-------------------------|
|                    | Attn: Loan Department   |

With a copy to:
MUCH SHELIST
191 North Wacker Drive, Suite 1800
Chicago, Illinois 60606
Attn: Don S. Hershman, Esq.

To Guarantor:
Richard Todd
520 S. W. Yanhill, Suite 430
Portland, Oregon 97204

Stephen Stoelk
16353 SE River Forest Place
Milwaukie, Oregon 97267

With a copy to:
Bertoni & Todd
520 S. W. Yanhill, Suite 430
Portland, Oregon 97402
Attn: Richard Todd

or to any other address as to any of the parties hereto, as such party shall designate in a written notice to the other parties hereto. All notices sent pursuant to the terms of this Section shall be deemed received (i) if personally delivered, then on the date of delivery, (ii) if sent by overnight, express carrier, then on the next federal banking day immediately following the day sent, or (iii) if sent by registered or certified mail, then on the earlier of the third federal banking day following the day sent or when actually received.

18.    **CONSENT TO JURISDICTION.** TO INDUCE LENDER TO ACCEPT THIS GUARANTY, EACH GUARANTOR IRREVOCABLY AGREES THAT, SUBJECT TO LENDER'S SOLE AND ABSOLUTE ELECTION, ALL ACTIONS OR PROCEEDINGS IN ANY WAY ARISING OUT OF OR RELATED TO THIS GUARANTY WILL BE LITIGATED IN COURTS HAVING SITUS IN CHICAGO, ILLINOIS. EACH GUARANTOR HEREBY CONSENTS AND SUBMITS TO THE JURISDICTION OF ANY COURT LOCATED WITHIN CHICAGO, ILLINOIS, WAIVES PERSONAL SERVICE OF PROCESS AND AGREES THAT ALL SUCH SERVICE OF PROCESS MAY BE MADE BY REGISTERED MAIL DIRECTED TO SUCH GUARANTOR AT THE ADDRESS STATED HEREIN AND SERVICE SO MADE WILL BE DEEMED TO BE COMPLETED UPON ACTUAL RECEIPT.

19.    **WAIVER OF JURY TRIAL.** EACH GUARANTOR AND LENDER (BY ACCEPTANCE HEREOF), HAVING BEEN REPRESENTED BY COUNSEL, EACH KNOWINGLY AND VOLUNTARILY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS UNDER THIS GUARANTY OR UNDER ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION HEREWITH AND AGREES THAT ANY SUCH ACTION OR PROCEEDING WILL BE TRIED BEFORE A COURT AND NOT

7

BEFORE A JURY. EACH GUARANTOR AGREES THAT IT WILL NOT ASSERT ANY CLAIM AGAINST LENDER ON ANY THEORY OF LIABILITY FOR SPECIAL, INDIRECT, CONSEQUENTIAL, INCIDENTAL OR PUNITIVE DAMAGES.

20.     **Entire Agreement**. This Guaranty embodies the entire agreement between Lender and Guarantors with respect to the guaranty by Guarantors of the Payment Obligations This Guaranty supersedes all prior agreements and understandings, if any, with respect to guaranty by Guarantors of the Payment Obligations. No condition or conditions precedent to the effectiveness of this Guaranty exist.    This Guaranty shall be effective upon execution by Guarantors and delivery to Lender.

21.     **Special California Provisions**. If, notwithstanding the express election by the parties to have Illinois law apply to this Guaranty pursuant to Section 16 hereof, there should ever be a determination that California law applies to this Guaranty then each Guarantor, with the advice of competent California counsel, understands and acknowledges the following:

a.     That if Lender forecloses judicially or nonjudicially against any real property security for the Loan, the foreclosure could impair or destroy any ability that the Guarantor may have to seek reimbursement, contribution or indemnification from Borrower for any amounts paid by such Guarantor under this Guaranty;

b.     That in the absence of this Section 22, such potential impairment or destruction of the Guarantor's rights, if any, may entitle the Guarantor to assert a defense to this Guaranty based on Section 580d of the California Code of Civil Procedure, as interpreted in Union Bank v. Gradsky, 265 Cal.App.2d 40 (1968); and

c.     That by executing this Guaranty, each Guarantor freely, irrevocably and unconditionally;

(i)     waives all rights and defenses, if any, arising out of an election of remedies by Lender, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has or may have destroyed the Guarantor's rights of subrogation and reimbursement against Borrower by the operation of Section 580d of the California Code of Civil Procedure or otherwise;

(ii)     waives all rights and defenses, if any, that the Guarantor may have because Borrower's debt is secured by real property owned by the Borrower. This means, among other things: (1) the creditor may collect from the Guarantor without first foreclosing on any real or personal property collateral pledged by Borrower; (2) if the creditor forecloses on any real property collateral pledged by Borrower (a) the amount of the debt may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sales price, and (b) the creditor may collect from the Guarantor even if the creditor, by foreclosing on the real property collateral, has destroyed any right the Guarantor may have to collect from Borrower. This is an

8

unconditional and irrevocable waiver of any rights and defenses the Guarantor may have because Borrower's debt is secured by real property owned by Borrower. These rights and defenses include any rights or defenses based upon Section 580a, 580b, 580d or 726 of the California Code of Civil Procedure;

(iii)    waives all rights of subrogation, reimbursement, indemnification and contribution and any other rights and defenses that are or may become available to the Guarantor by reason of Sections 2787 to 2855, inclusive, of the California Civil Code;

(iv)    agrees that the Guarantor will not assert any of the foregoing defenses in any action or proceeding which Lender may commence to enforce this Guaranty;

(v)    acknowledges and agrees that the rights and defenses waived by the Guarantor under this Guaranty include any right or defense that the Guarantor may have or be entitled to assert based upon or arising out of any one or more of the following: Sections 580a, 580b, 580d or 726 of the California Code of Civil Procedure or Sections 2809, 2810, 2845, 2847, 2848, 2849 and 2850 of the California Civil Code;

(vi)    acknowledges and agrees that the Lender is relying on this waiver in making the Loan, and that this waiver is a material part of the consideration which Lender is receiving for making the Loan; and

(vii)    acknowledges and agrees that the Guarantor intends the foregoing to be express waivers of each and every one of said specific rights and/or defenses as contemplated under California Civil Code Section 2856.

**THE WRITTEN LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

[SIGNATURE PAGE FOLLOWS]

9

**IN WITNESS WHEREOF**, Guarantor has executed this Guaranty of Payment as of the Effective Date.

Name:  Richard Todd

Name:  Stephen Stoelk

## EXHIBIT C

# B̲ Builders Bank

Executive Offices
77 W. Wacker Dr.
Suite 3100
Chicago, IL 60601-4900

*writer's direct line*
*312/750-9302*
*312/696-0090 fax*
*bschulz@buildersbank.com*

October 12, 2005

**Via overnight delivery**
Richard W. Todd
Borrego Resort Holdings, LLC
520 SW Yamhill, #430
Portland, OR 97204

Re:    **Loan No 0683922001 (the "Loan")—Borrego Resort Holdings, LLC
("Borrower")**

Dear Mr. Todd:

Builders Bank has approved your request to extend the Maturity Date of the Loan to January 14, 2006, despite Borrower's failure to satisfy the conditions for extension set for in Clauses (vi) and (viii) of Section 2.1(A) of the Promissory Note Secured by Deed of Trust (the "Note") dated April 14, 2005, made by Borrower to the order of Builders Bank, which such Clauses are hereby waived subject to your agreement to the following.

In consideration of waiving the referenced conditions, Borrower hereby agrees as follows:

1. The conditions set forth in Clauses (vi) and (viii) of Section 2.1(A) of the Note shall be conditions to Borrower's right to extend the Maturity Date of the Loan from January 14, 2006 to April 14, 2006, in addition to the other conditions set forth in Section 2.1(B) of the Note.
2. On or before November 8, 2005, Borrower shall deliver to Builders Bank satisfactory evidence that the promissory note dated March, 2005 made by Stephen Stoelk payable to Michael Foster has been paid in full and satisfied.
3. Concurrent with its countersignature hereof, Borrower shall pay to Builders Bank a processing fee of $1,500.



tel: 312.750.9300
fax: 312.977.1439
www.buildersbank.com



# Builders Bank

Executive Offices
77 W. Wacker Dr.
Suite 3100
Chicago, IL 60601-4900

*writer's direct line*
*312/750-9302*
*312/696-0090 fax*
*bschulz@buildersbank.com*

February 10, 2006

**Via E-Mail**
Richard W. Todd
Borrego Resort Holdings, LLC
520 SW Yamhill, #430
Portland, OR 97204

Re:    **Loan No 0683922001 (the "Loan")—Borrego Resort Holdings, LLC ("Borrower")**

Dear Mr. Todd:

Builders Bank has approved your request to extend the Maturity Date of the Loan to April 14, 2006, despite Borrower's failure to satisfy the conditions for extension set for in Clauses (iii), (iv), (v) and (vi) of Section 2.1(B) of the Promissory Note Secured by Deed of Trust (the "Note") dated April 14, 2005, made by Borrower to the order of Builders Bank and Clause (viii) of Section 2.1(A) of the Note (deferred by letter dated October 12, 2005), which such Clauses are hereby waived. We acknowledge receipt of your $6,250 extension fee. As conditions precedent to the extension, however, Borrower shall (i) cause its new equity investor, DGHD-Borrego, LLC, and its owners, Lyman Eaton and James Carlberg, to execute a guaranty of the Loan, in the form previously provided, and (ii) pay all interest accrued on the Loan to February 5, 2006 in the amount of $2,134.86.

Please cause borrower to countersign and return this letter to me as soon as possible to indicate its acknowledgement of and agreement with the foregoing.

Very truly yours,

Barrett J. Schulz
Senior Vice President





tel: 312.750.9300
fax: 312.977.1439
www.buildersbank.com

 **Builders Bank**

Executive Offices
77 W. Wacker Dr.
Suite 3100
Chicago, IL 60601-4900

writer's direct line
312/750-9302
312/696-0090 fax
bschulz@buildersbank.com

April 26, 2006

**Via E-Mail**
Richard W. Todd
Borrego Resort Holdings, LLC
520 SW Yamhill, #430
Portland, OR 97204

Re:   Loan No 0683922001 (the "Loan")—Borrego Resort Holdings, LLC
      ("Borrower")

Dear Mr. Todd:

Builders Bank has approved your request to extend the Maturity Date of the Loan to July
17, 2006. All other terms of the Promissory Note Secured by Deed of Trust (the "Note")
dated April 14, 2005, made by Borrower to the order of Builders Bank shall continue and
remain in full force and effect. As conditions precedent to the extension, however,
Borrower shall (i) pay an extension fee of $6,250, and (ii) pay all interest accrued on the
Loan to May 5, 2006 in the amount of $20,451.

Please cause borrower to countersign and return this letter to me as soon as possible to
indicate its acknowledgement of and agreement with the foregoing.

Very truly yours,

Barrett J. Schulz
Senior Vice President

AGREED AND ACKNOWLEDGED

BORREGO RESORT HOLDINGS, LLC
an Oregon limited liability company

By:   DGHD-Borrego, LLC, its manager

By:
      Name: LYMAN EATON II
      Title: MANAGING member

 **FDIC**

tel: 312.750.9300
fax: 312.977.1439
www.buildersbank.com





Builders Bank

Executive Offices
77 W. Wacker Dr.
Suite 3100
Chicago, IL 60601-4900

Writer's direct line
312/750-8302
312/896-0090 fax
bschulz@buildersbank.com

July 17, 2006

**Via E-Mail**
Richard W. Todd
Borrego Resort Holdings, LLC
520 SW Yamhill, #430
Portland, OR 97204

     Re:     <u>Loan No 0683922001 (the "Loan")—Borrego Resort Holdings, LLC</u>
             <u>("Borrower")</u>

Dear Mr. Todd:

Builders Bank has approved your request to extend the Maturity Date of the Loan to October 17, 2006. As conditions precedent to the extension, however, Borrower shall (i) pay an extension fee of $6,250, and (ii) make a principal reduction payment in the amount of $203,000.

In addition, Builders Bank has approved your request to provide you with a further option to extend the term of the Loan to January 17, 2007 upon the following conditions:

           (a)    Borrower provides Builders Bank with written notice of its intent to so extend the Maturity Date not less than thirty (30) days prior to the Maturity Date (the "Extension Notice");

           (b)    Concurrently with Borrower's delivery of the Extension Notice with Builders Bank, Borrower provides Builders Bank with an extension fee in an amount equal $5,742.50;

           (c)    Borrower rebalances any interest and/or tax reserves maintained by Builders Bank, if required;

           (d)    Borrower provides Builders Bank with updated financial statements and tax returns for Borrower and Guarantor, all as requested by and satisfactory to Builders Bank;

           (e)    Borrower provides Builders Bank with a copy of the grading permit for the Property and satisfactory evidence that actual grading of the Property has commenced; and

           (f)    Borrower provides Builders Bank with satisfactory evidence that complete plans and specifications for the project





 **Builders Bank**

Executive Offices
77 W. Wacker Dr.
Suite 3100
Chicago, IL 60601-4900

*writer's direct line*
*312/750-9302*
*312/696-0090 fax*
*bschulz@buildersbank.com*

December 21, 2006

**Via E-Mail**
Richard W. Todd
Borrego Resort Holdings, LLC
520 SW Yamhill, #430
Portland, OR 97204

Re:  Loan No 683922001 (the "Loan")—Borrego Resort Holdings, LLC
("Borrower")

Dear Mr. Todd:

Builders Bank has approved your request to extend the Maturity Date of the Loan to January 17, 2007, despite Borrower's failure to meet and satisfy the conditions set forth in clauses (a), (c), (d), (e) and (f) of the Extension and Modification Letter dated July 17, 2006, which such clauses are hereby waived. The extension, however, is conditioned upon (i) your payment to Lender in the amount of $19,620.20 for interest due to December 5, 2006, and (ii) Borrower agreement to pay Lender an extension fee in the amount of $5,742.50, which extension fee, although fully earned on the date hereof, shall be due and payable at the sooner of (a) January 17, 2007, or (b) repayment of all outstanding principal and interest due under the Loan.

All other terms and conditions of the Loan under the Extension and Modification Letter dated July 17, 2006, and under the Promissory Noted Secured by Deed of Trust dated April 14, 2005, described therein shall continue and remain in full force and effect.

Please countersign and return this letter to me as soon as possible to indicate its acknowledgement of and agreement with the foregoing.

Very truly yours,

Barrett J. Schulz
Senior Vice President

AGREED AND ACKNOWLEDGED

BORREGO RESORT HOLDINGS, LLC
an Oregon limited liability company

By:  DGHD-Borrego, LLC, its manager

By: _____
Its: Managing Member

 **FDIC**

tel: 312.750.9300
fax: 312.977.1439
www.buildersbank.com



# B Builders Bank

Executive Offices
77 W. Wacker Dr.
Suite 3100
Chicago, IL 60601-4900

*Writer's direct line*
*312/750-9302*
*312/696-0060 fax*
*bschulz@buildersbank.com*

February 5, 2007

**VIA FACSIMILE & FEDERAL EXPRESS**
**FAX # 503/243-6307**

Richard W. Todd
Borrego Resort Holdings, LLC
520 SW Yamhill, #430
Portland, OR  97204

> Re:  **Loan No 683922001 (the "Loan")—Borrego Resort Holdings, LLC ("Borrower")**

Dear Mr. Todd:

Builders Bank has approved your request to extend the Maturity Date of the Loan to May 5, 2007. The extension, however, is conditioned upon receipt of the following items, by February 15, 2007: (i) 2005 personal tax returns of Lyman Eaton, Stephen Stoelk and Richard Todd; and (ii) a signed, personal financial statement of Lyman Eaton.

Lender acknowledges receipt of $74,485.00 which will be applied as follows:  (i) payment of the deferred $5,742.50 extension fee which was due January 17, 2007 for a previous extension; (ii) payment of the $5,742.50 fee for the current extension; and (iii) $63,000 to replenish the interest reserve, $20,274.21 of which will be used to pay interest accrued to February 5, 2007.

All other terms and conditions of the Loan under Promissory Note Secured by Deed of Trust, dated April 14 2005, as amended, described therein shall continue and remain in full force and effect.

Please countersign and return this letter to me as soon as possible to indicate its acknowledgement of and agreement with the foregoing.

Very truly yours,

Barrett J. Schulz
Senior Vice President

AGREED AND ACKNOWLEDGED

BORREGO RESORT HOLDINGS, LLC
an Oregon limited liability company

By:  DGHD Borrego, LLC, its manager

By: _____

Its: _____

        


# Builders Bank

writer's direct line
312/750-9302
312/696-0090 fax
bschulz@buildersbank.com

Executive Offices
225 W. Wacker Dr.
Suite 2000
Chicago, IL 60606-1224

May 30, 2007

**VIA E-MAIL:** deaton@insightbb.com & leaton@dc.rr.com

Lyman D. Eaton
Borrego Resort Holdings, LLC
520 SW Yamhill , #430
Portland, OR 97204

> Re: **Loan No 683922001 (the "Loan")—Borrego Resort Holdings, LLC
> ("Borrower")**

Dear Mr. Eaton:

Builders Bank has approved your request to extend the Maturity Date of the Loan to August 5, 2007. An Extension Fee of $5,742.50 is due on June 5, 2007; however, if the Loan is paid off prior to June 5, 2007, the Extension Fee shall be waived.

All other terms and conditions of the Loan under Promissory Note Secured by Deed of Trust, dated April 14, 2005, as amended, described therein shall continue and remain in full force and effect. Please countersign and return this letter to me as soon as possible to indicate its acknowledgement of and agreement with the foregoing.

Very truly yours,

Barrett J. Schulz
Senior Vice President

AGREED AND ACKNOWLEDGED

BORREGO RESORT HOLDINGS, LLC
an Oregon limited liability company

By: DGHD Borrego, LLC, its manager

By: _____

Its: _____

# B Builders Bank

Executive Offices
225 W. Wacker Dr.
Suite 2000
Chicago, IL 60606-1224

*writer's direct line*
*312/750-9302*
*312/696-0090 fax*
*bschulz@buildersbank.com*

August 9, 2007

**VIA E-MAIL:** ldeaton@insightbb.com & leaton@dc.rr.com

Lyman D. Eaton
Borrego Resort Holdings, LLC
520 SW Yamhill, #430
Portland, OR 97204

**Re:**     **Loan No 683922001 (the "Loan")—Borrego Resort Holdings, LLC
("Borrower")**

Dear Mr. Eaton:

Builders Bank has approved your request to extend the Maturity Date of the Loan to September 5, 2007. All other terms and conditions of the Loan under the Promissory Note Secured by Deed of Trust, dated April 14, 2005, as amended, described therein shall continue and remain in full force and effect.

Very truly yours,

Barrett J. Schulz
Senior Vice President




 **Builders Bank**

Executive Offices
225 W. Wacker Dr.
Suite 2000
Chicago, IL 60606-1224

writer's direct line
312/750-9302
312/896-0090 fax
bschulz@buildersbank.com

October 24, 2007

VIA E-MAIL: ldeaton@insightbb.com & leaton@dc.rr.com

Lyman D. Eaton
Borrego Resort Holdings, LLC
520 SW Yamhill, #430
Portland, OR 97204

> Re:    Loan No 683922001 (the "Loan")—Borrego Resort Holdings, LLC
> ("Borrower")

Dear Mr. Eaton:

Builders Bank has approved your request to extend the Maturity Date of the Loan to March 5, 2008. The extension, however, is conditioned upon the following: (i) payment of an Extension Fee of $11,485.00 in two equal installments of $5,742.50 each. The first installment is due as a condition to the closing of this Extension. The second installment will be due on December 5, 2007, however, if the Loan is paid off prior to December 5, 2007, the second installment of the Extension Fee shall be waived; and (ii) re-payment of principal in monthly installments equal to $25,000.00 each, beginning on November 5, 2007 and on the fifth of every month thereafter.

All other terms and conditions of the Loan under Promissory Note Secured by Deed of Trust, dated April 14, 2005, as amended, described therein shall continue and remain in full force and effect. Please countersign and return this letter to me as soon as possible to indicate its acknowledgement of and agreement with the foregoing.

Very truly yours,

Barrett J. Schulz
Senior Vice President

AGREED AND ACKNOWLEDGED

BORREGO RESORT HOLDINGS, LLC
an Oregon limited liability company

By:    DGHD-Borrego, LLC, its manager

By:
Its: Managing Member

Member
FDIC

tel: 312.750.9300
www.buildersbank.com



**EXHIBIT D**

## GUARANTY OF PAYMENT

**THIS GUARANTY OF PAYMENT** (this **"Guaranty"**) is dated as of February ___, 2006 (the **"Effective Date"**) by DGHD-BORREGO, LLC, a _____ limited liability company and LYMAN EATON (each, a **"Guarantor"**, and collectively the **"Guarantors"**), jointly and severally for the benefit of **BUILDERS BANK**, an Illinois banking corporation (**"Lender"**).

## RECITALS:

A.    On or about April 14, 2005, Lender made a loan in the principal amount of Two Million Six Hundred Fifty Thousand and 00/100 Dollars ($2,650,000.00) (**"Loan"**) to BORREGO RESORT HOLDINGS, LLC, a Oregon limited liability company (**"Borrower"**).

B.    As a condition precedent to Lender consenting to certain ownership and management control of Borrower and extending the Loan and in consideration therefor, Lender has required the execution and delivery of (i) this Guaranty by Guarantor, (ii) that certain Promissory Note of even date herewith (as amended from time to time, **"Note"**) made by Borrower payable to Lender to evidence the Loan, (iii) that certain Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Filing of even date herewith (as amended from time to time, **"Deed of Trust"**) from Borrower to First American Title Insurance Company, as trustee for the benefit of Lender encumbering the real property, improvements and personalty described therein (**"Premises"**), and (iv) the other Loan Documents (as defined in the Note).

C.    Each of the Guarantors is a director indirect owner of Borrower and, having a financial interest in the Premises, has agreed to execute and deliver this Guaranty to Lender.

**NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which hereby are acknowledged, each of the Guarantors hereby agrees as follows:

1.    **Guaranty.**  Each of the Guarantors hereby unconditionally, absolutely and ‚irrevocably guaranties to Lender, the punctual payment and performance when due, whether at stated maturity or by acceleration or otherwise, of the indebtedness and other obligations of Borrower to Lender evidenced by the Note and any other amounts that may become owing by Borrower under the Loan Documents (such indebtedness, obligations and other amounts are hereinafter referred to as **"Payment Obligations"**).  This Guaranty is a present and continuing guaranty of payment and not of collectibility, and Lender shall not be required to prosecute collection, enforcement or other remedies against Borrower or any other guarantor of the Payment Obligations, or to enforce or resort to any collateral for the repayment of the Payment Obligations or other rights or remedies pertaining thereto, before calling on any Guarantor for payment.  If for any reason Borrower shall fail or be unable to pay, punctually and fully, any of the Payment Obligations, Guarantors shall pay such obligations to Lender in full immediately upon demand.  One or more successive actions may be brought against any or all of the Guarantors, as often as Lender deems advisable, until all of the Payment Obligations are paid

and performed in full. The Payment Obligations, together with all other payment and performance obligations of Guarantors hereunder are referred to herein as the **"Obligations"**.

2. **Representations and Warranties.** The following shall constitute representations and warranties of each of the Guarantors and each of the Guarantors hereby acknowledges that Lender intends to make the Loan in reliance thereon:

a. No Guarantor is in default and no event has occurred which, with the passage of time and/or the giving of notice, would constitute a default under any agreement to which any Guarantor is a party, the effect of which will impair performance by such Guarantor of his, her or its obligations under this Guaranty. Neither the execution and delivery of this Guaranty nor compliance with the terms and provisions hereof will, to the best of such Guarantor's knowledge, violate any applicable law, rule, regulation, judgment, decree or order, or will conflict with or result in any breach of any of the terms, covenants, conditions or provisions of any indenture, Deed of Trust, deed of trust, instrument, document, agreement or contract of any kind that creates, represents, evidences or provides for any lien, charge or encumbrance upon any of the property or assets of any of the Guarantors, or any other indenture, Deed of Trust, deed of trust, instrument, document, agreement or contract of any kind to which any Guarantor is a party or to which any Guarantor or the property of such Guarantor may be subject.

b. There are no litigation, arbitration, governmental or administrative proceedings, actions, examinations, claims or demands pending, or to any Guarantor's knowledge, threatened that could adversely affect performance by any Guarantor of his, her or its obligations under this Guaranty.

c. Neither this Guaranty nor any statement or certification as to facts previously furnished or required herein to be furnished to Lender by any Guarantor, contains any material inaccuracy or untruth in any representation, covenant or warranty or omits to state a fact material to this Guaranty.

d. As the Members of Borrower, each Guarantor will derive substantial benefit, directly or indirectly, from the making of the Loan to Borrower and from making of this Guaranty by such Guarantor.

e. This Guaranty is executed at the request of Borrower, Lender has made no representation to any Guarantor as to the creditworthiness of Borrower and each Guarantor assumes the responsibility for keeping informed of the financial condition of Borrower and all other circumstances the risk of nonpayment or nonperformance of the Payment Obligations, and each Guarantor agrees that Lender shall have no duty to advise such Guarantor of any information known to Lender regarding any such financial conditions or circumstances.

3. **Continuing Guaranty.** Each Guarantor agrees that performance of the Obligations by Guarantors shall be a primary obligation, shall not be subject to any counterclaim, set-off, abatement, deferment or defense based upon any claim that any Guarantor may have against Lender, Borrower, any other guarantor of the Obligations or any other person or entity,

and shall remain in full force and effect without regard to, and shall not be released, discharged or affected in any way by, any circumstance or condition (whether or not such Guarantor shall have any knowledge thereof), including without limitation:

   a.    any lack of validity or enforceability of any of the Loan Documents;

   b.    any termination, amendment, modification or other change in any of the Loan Documents, including, without limitation, any modification of the interest rate(s) described therein;

   c.    any furnishing, exchange, substitution or release of any collateral securing repayment of the Loan, or any failure to perfect any lien in such collateral;

   d.    any failure, omission or delay on the part of Borrower, any Guarantor, any other guarantor of the Obligations or Lender to conform or comply with any term of any of the Loan Documents or any failure of Lender to give notice of any Event of Default (as defined in the Note);

   e.    any waiver, compromise, release, settlement or extension of time of payment or performance or observance of any of the obligations or agreements contained in any of the Loan Documents;

   f.    any action or inaction by Lender under or in respect of any of the Loan Documents, any failure, lack of diligence, omission or delay on the part of Lender to perfect, enforce, assert or exercise any lien, security interest, right, power or remedy conferred on it in any of the Loan Documents, or any other action or inaction on the part of Lender;

   g.    any voluntary or involuntary bankruptcy, insolvency, reorganization, arrangement, readjustment, assignment for the benefit of creditors, composition, receivership, liquidation, marshalling of assets and liabilities or similar events or proceedings with respect to Borrower, any Guarantor or any other guarantor of the Obligations, as applicable, or any of their respective property or creditors, or any action taken by any trustee or receiver or by any court in any such proceeding;

   h.    any merger or consolidation of Borrower into or with any entity, or any sale, lease or transfer of any of the assets of Borrower, any Guarantor or any other guarantor of the Obligations to any other person or entity;

   i.    any change in the ownership of Borrower or any change in the relationship between Borrower, any Guarantor or any other guarantor of the Obligations, or any termination of any such relationship;

   j.    any release or discharge by operation of law of Borrower, any Guarantor or any other guarantor of the Obligations from any obligation or agreement contained in any of the Loan Documents;

    k.    any defense arising out of the application by Borrower of proceeds of the Loan for purposes other than the purposes represented by Borrower to Lender; or

    l.    any other occurrence, circumstance, happening or event, whether similar or dissimilar to the foregoing and whether foreseen or unforeseen, which otherwise might constitute a legal or equitable defense or discharge of the liabilities of a guarantor or surety or which otherwise might limit recourse against Borrower or any Guarantor to the fullest extent permitted by law.

    4.    **Waivers**. Each Guarantor expressly and unconditionally waives (i) notice of any of the matters referred to in Section 3/4 above, (ii) all notices which may be required by statute, rule of law or otherwise, now or hereafter in effect, to preserve intact any rights against Guarantor, including, without limitation, notice of acceptance of this Guaranty, any demand, presentment and protest, notice of protest, notice of dishonor, proof of notice of non-payment under any of the Loan Documents and notice of any Event of Default or any failure on the part of Borrower, any Guarantor or any other guarantor of the Obligations to perform or comply with any covenant, agreement, term or condition of any of the Loan Documents, (iii) any right to the enforcement, assertion or exercise against Borrower, any Guarantor or any other guarantor of the Obligations of any right or remedy conferred under any of the Loan Documents, (iv) any requirement of diligence on the part of any person or entity, (v) to the fullest extent permitted by law and except as otherwise expressly provided in this Guaranty or the other Loan Documents, any claims based on allegations that Lender has failed to act in a commercially reasonable manner or failed to exercise Lender's so-called obligation of good faith and fair dealing, (vi) any requirement to exhaust any remedies or to mitigate the damages resulting from any default under any of the Loan Documents, (vii) any notice of any sale, transfer or other disposition of any right, title or interest of Lender under any of the Loan Documents; (viii) any right to require Lender to proceed against Borrower, to proceed against any other person, or to proceed against or exhaust any security held from Borrower or any other person; (ix) any right to have the property of Borrower first applied to discharge the Obligations, allowing Lender, at its option, to exercise any right or remedy it may have against Borrower or any security held by Lender; (x) any defense based upon Lender's failure to disclose to any Guarantor any information concerning Borrower's financial condition or any other circumstances bearing on Borrower's ability to pay and perform its obligations under any of the Loan Documents; (x) any defense based upon any statute or rule of law which provides that the obligations of a surety may be neither larger in amount nor in any other respects more burdensome than that of a principal; and (xi) the benefit of or right to assert any statute of limitations affecting the liability of any Guarantor hereunder or the enforcement thereof, to the extent permitted by law, and any part payment by Borrower or other circumstance which operates to toll any statute of limitations as to Borrower shall also serve to toll the statute of limitations as to any Guarantor.

    5.    **Subordination**. Each Guarantor agrees that any and all present and future debts and obligations of Borrower to such Guarantor hereby are subordinated to the claims of Lender nd hereby are assigned by Guarantors to Lender as security for the Obligations and Guarantor's obligations under this Guaranty.

    6.    **Subrogation Waiver**. Until the Obligations are paid in full and all periods under applicable bankruptcy law for the contest of any payment by Guarantors or Borrower as a

preferential or fraudulent payment have expired, each Guarantor knowingly, and with advice of counsel, waives, relinquishes, releases and abandons all rights and claims to indemnification, contribution, reimbursement, subrogation and payment which any Guarantor may now or hereafter have by and from Borrower and the successors and assigns of Borrower, for any payments made by such Guarantor to Lender, including, without limitation, any rights which might allow Borrower, Borrower's successors, a creditor of Borrower, or a trustee in bankruptcy of Borrower to claim in bankruptcy or any other similar proceedings that any payment made by Borrower or Borrower's successors and assigns to Lender was on behalf of or for the benefit of any Guarantor and that such payment is recoverable by Borrower, a creditor or trustee in bankruptcy of Borrower as a preferential payment, fraudulent conveyance, payment of an insider or any other classification of payment which may otherwise be recoverable from Lender.

7.    **Reinstatement.**  The obligations of Guarantors pursuant to this Guaranty shall continue to be effective or automatically be reinstated, as the case may be, if at any time payment of any of the Obligations or Guarantors' obligations under this Guaranty rescinded or otherwise must be restored or returned by Lender upon the insolvency, bankruptcy, dissolution, liquidation or reorganization of any Guarantor or Borrower or otherwise, all as though such payment had not been made.

8.    **Financial Statements.**  Each Guarantor represents and warrants to Lender that (a) the financial statements of such Guarantor previously submitted to Lender are true, complete and correct in all material respects, disclose all actual and contingent liabilities, and fairly present the financial condition of such Guarantor, and do not contain any untrue statement of a material fact or omit to state a fact material to the financial statements submitted or this Guaranty and (b) no material adverse change has occurred in the financial statements from the dates thereof until the Effective Date. Each Guarantor shall furnish to Lender annual financial statements for each calendar year no later than ninety (90) days after the end of such years certified by such Guarantor as true, complete and correct and otherwise in a form substantially similar to the form of financial statements previously submitted by such Guarantor to Lender, unless otherwise approved in writing by Lender.

9.    **Transfers, Sales, Etc.**  None of the Guarantors shall sell, lease, transfer, convey or assign any of his assets, unless (a) if such Guarantor is an individual, such sale, lease, transfer, conveyance or assignment is of a non-material asset of such Guarantor or (b) if such Guarantor is a corporation, partnership or other entity, such sale, lease, transfer, conveyance or assignment is performed in the ordinary course of its business consistent with past practices, and will not have a material adverse effect on the business or financial condition of such Guarantor or its ability to perform its obligations hereunder. In addition, none of the Guarantors shall become a party to any merger or consolidation, nor, except in the ordinary course of its business consistent with past practices, acquire all or substantially all of the assets of, a controlling interest in the stock of, or a partnership or joint venture interest in, any other entity.

10.    **Enforcement Costs.**  If: (a) this Guaranty, is placed in the hands of one or more attorneys for collection or is collected through any legal proceeding; (b) one or more attorneys is retained to represent Lender in any bankruptcy, reorganization, receivership or other proceedings affecting creditors' rights and involving a claim under this Guaranty, or (c) one or more attorneys is retained to represent Lender in any other proceedings whatsoever in connection with this

Guaranty, then Guarantors shall pay to Lender upon demand all reasonable fees, costs and expenses incurred by Lender in connection therewith, including, without limitation, reasonable attorney's fees, court costs and filing fees (all of which are referred to herein as "**Enforcement Costs**"), in addition to all other amounts due hereunder.

11.    **Successors and Assigns; Joint and Several Liability**.  This Guaranty shall inure to the benefit of Lender and its successors and assigns.  This Guaranty shall be the joint and several undertaking of each of the Guarantors, and shall be binding on each Guarantor and the respective heirs, legatees, successors and assigns of each Guarantor.  Regardless of whether this Guaranty is executed by more than one person, it is agreed that the undersigned's liability hereunder is several and independent of any other guarantees or other obligations at any time in effect with respect to the Obligations or any part thereof and that Guarantor's liability hereunder may be enforced regardless of the existence, validity, enforcement or non-enforcement of any such other guarantees or other obligations.

12.    **No Waiver of Rights**.  No delay or failure on the part of Lender to exercise any right, power or privilege under this Guaranty or any of the other Loan Documents shall operate as a waiver thereof, and no single or partial exercise of any right, power or privilege shall preclude any other or further exercise thereof or the exercise of any other power or right, or be deemed to establish a custom or course of dealing or performance between the parties hereto.  The rights and remedies herein provided are cumulative and not exclusive of any rights or remedies provided by law.  No notice to or demand on any Guarantor in any case shall entitle any Guarantor to any other or further notice or demand in the same, similar or other circumstance.

13.    **Modification**.  The terms of this Guaranty may be waived, discharged, or terminated only by an instrument in writing signed by the party against which enforcement of the change, waiver, discharge or termination is sought.  No amendment, modification, waiver or other change of any of the terms of this Guaranty shall be effective without the prior written consent of Lender.

14.    **Joinder**.  Any action to enforce this Guaranty may be brought against any Guarantor without any reimbursement or joinder of Borrower, any other Guarantor or any other guarantor of the Obligations in such action.

15.    **Severability**.  If any provision of this Guaranty is deemed to be invalid by reason of the operation of law, or by reason of the interpretation placed thereon by any administrative agency or any court, Guarantors and Lender shall negotiate an equitable adjustment in the provisions of the same in order to effect, to the maximum extent permitted by law, the purpose of this Guaranty and the validity and enforceability of the remaining provisions, or portions or applications thereof, shall not be affected thereby and shall remain in full force and effect.

16.    **Applicable Law**.  This Guaranty is governed as to validity, interpretation, effect and in all other respects by laws and decisions of the State of Illinois.

17.    **Notice**.  All notices, communications and waivers under this Guaranty shall be in writing and shall be (a) delivered in person or (b) mailed, postage prepaid, either by registered or

certified mail, return receipt requested, or (c) by overnight express carrier, addressed in each case
as follows:

To Lender:

> BUILDERS BANK
> 77 West Wacker Drive, Suite 3100
> Chicago, Illinois 60601
> Attn: Loan Department

With a copy to:

> MUCH SHELIST
> 191 North Wacker Drive, Suite 1800
> Chicago, Illinois 60606
> Attn: Don S. Hershman, Esq.

To Guarantor:

> Lyman Eaton
> Bose McKinney & Evans LLC
> 2700 First Indiana Plaza
> 135 N. Pennsylvania Street
> Indianapolis, Indiana 46204

And to:

> James Carlberg
> Bose McKinney & Evans LLC
> 2700 First Indiana Plaza
> 135 N. Pennsylvania Street
> Indianapolis, Indiana 46204

With a copy to:

> Bertini & Todd
> 420 S. W. Yanhill, Suite 430
> Portland, Oregon 97402
> Attn: Richard Todd

or to any other address as to any of the parties hereto, as such party shall designate in a written
notice to the other parties hereto. All notices sent pursuant to the terms of this Section shall be
deemed received (i) if personally delivered, then on the date of delivery, (ii) if sent by overnight,
express carrier, then on the next federal banking day immediately following the day sent, or
(iii) if sent by registered or certified mail, then on the earlier of the third federal banking day
following the day sent or when actually received.

18. **CONSENT TO JURISDICTION.** TO INDUCE LENDER TO ACCEPT
THIS GUARANTY, EACH GUARANTOR IRREVOCABLY AGREES THAT, SUBJECT
TO LENDER'S SOLE AND ABSOLUTE ELECTION, ALL ACTIONS OR
PROCEEDINGS IN ANY WAY ARISING OUT OF OR RELATED TO THIS
GUARANTY WILL BE LITIGATED IN COURTS HAVING SITUS IN CHICAGO,
ILLINOIS. EACH GUARANTOR HEREBY CONSENTS AND SUBMITS TO THE
JURISDICTION OF ANY COURT LOCATED WITHIN CHICAGO, ILLINOIS,
WAIVES PERSONAL SERVICE OF PROCESS AND AGREES THAT ALL SUCH
SERVICE OF PROCESS MAY BE MADE BY REGISTERED MAIL DIRECTED TO

SUCH GUARANTOR AT THE ADDRESS STATED HEREIN AND SERVICE SO MADE WILL BE DEEMED TO BE COMPLETED UPON ACTUAL RECEIPT.

19.    WAIVER OF JURY TRIAL. EACH GUARANTOR AND LENDER (BY ACCEPTANCE HEREOF), HAVING BEEN REPRESENTED BY COUNSEL, EACH KNOWINGLY AND VOLUNTARILY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS UNDER THIS GUARANTY OR UNDER ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION HEREWITH AND AGREES THAT ANY SUCH ACTION OR PROCEEDING WILL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY. EACH GUARANTOR AGREES THAT IT WILL NOT ASSERT ANY CLAIM AGAINST LENDER ON ANY THEORY OF LIABILITY FOR SPECIAL, INDIRECT, CONSEQUENTIAL, INCIDENTAL OR PUNITIVE DAMAGES.

20.    Entire Agreement. This Guaranty embodies the entire agreement between Lender and Guarantors with respect to the guaranty by Guarantors of the Payment Obligations This Guaranty supersedes all prior agreements and understandings, if any, with respect to guaranty by Guarantors of the Payment Obligations. No condition or conditions precedent to the effectiveness of this Guaranty exist. This Guaranty shall be effective upon execution by Guarantors and delivery to Lender.

21.    Special California Provisions. If, notwithstanding the express election by the parties to have Illinois law apply to this Guaranty pursuant to Section 16 hereof, there should ever be a determination that California law applies to this Guaranty then each Guarantor, with the advice of competent California counsel, understands and acknowledges the following:

a.    That if Lender forecloses judicially or nonjudicially against any real property security for the Loan, the foreclosure could impair or destroy any ability that the Guarantor may have to seek reimbursement, contribution or indemnification from Borrower for any amounts paid by such Guarantor under this Guaranty;

b.    That in the absence of this Section 22, such potential impairment or destruction of the Guarantor's rights, if any, may entitle the Guarantor to assert a defense to this Guaranty based on Section 580d of the California Code of Civil Procedure, as interpreted in Union Bank v. Gradsky, 265 Cal.App.2d 40 (1968); and

c.    That by executing this Guaranty, each Guarantor freely, irrevocably and unconditionally;

(i)    waives all rights and defenses, if any, arising out of an election of remedies by Lender, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has or may have destroyed the Guarantor's rights of subrogation and reimbursement against Borrower by the operation of Section 580d of the California Code of Civil Procedure or otherwise;

(ii)    waives all rights and defenses, if any, that the Guarantor may have because Borrower's debt is secured by real property owned by the Borrower.   This means, among other things: (1) the creditor may collect from the Guarantor without first foreclosing on any real or personal property collateral pledged by Borrower; (2) if the creditor forecloses on any real property collateral pledged by Borrower (a) the amount of the debt may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sales price, and (b) the creditor may collect from the Guarantor even if the creditor, by foreclosing on the real property collateral, has destroyed any right the Guarantor may have to collect from Borrower.   This is an unconditional and irrevocable waiver of any rights and defenses the Guarantor may have because Borrower's debt is secured by real property owned by Borrower.   These rights and defenses include any rights or defenses based upon Section 580a, 580b, 580d or 726 of the California Code of Civil Procedure;

(iii)    waives all rights of subrogation, reimbursement, indemnification and contribution and any other rights and defenses that are or may become available to the Guarantor by reason of Sections 2787 to 2855, inclusive, of the California Civil Code;

(iv)    agrees that the Guarantor will not assert any of the foregoing defenses in any action or proceeding which Lender may commence to enforce this Guaranty;

(v)    acknowledges and agrees that the rights and defenses waived by the Guarantor under this Guaranty include any right or defense that the Guarantor may have or be entitled to assert based upon or arising out of any one or more of the following: Sections 580a, 580b, 580d or 726 of the California Code of Civil Procedure or Sections 2809, 2810, 2845, 2847, 2848, 2849 and 2850 of the California Civil Code;

(vi)    acknowledges and agrees that the Lender is relying on this waiver in making the Loan, and that this waiver is a material part of the consideration which Lender is receiving for making the Loan; and

(vii)    acknowledges and agrees that the Guarantor intends the foregoing to be express waivers of each and every one of said specific rights and/or defenses as contemplated under California Civil Code Section 2856.

**THE WRITTEN LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

[SIGNATURE PAGE FOLLOWS]

**IN WITNESS WHEREOF**, Guarantor has executed this Guaranty of Payment as of the Effective Date.

> **DGHD-BORREGO, LLC**, a n I N D I A N A
> limited liability company
>
> By:
>
> Name: L Y M A N   D.   E A T O N
>
> Title: M A N A G I N G   M E M B E R
>
>
> Name:  Lyman Eaton

11

<u>**EXHIBIT E**</u>

 **Builders Bank**

Executive Offices
225 W. Wacker Dr.
Suite 2000
Chicago, IL 60606-1224

*writer's direct line*
*312/750-9302*
*312/696-0090 fax*
*bschulz@buildersbank.com*

October 24, 2007

<u>VIA E-MAIL:</u> ldeaton@insightbb.com & leaton@dc.rr.com

Lyman D. Eaton
Borrego Resort Holdings, LLC
520 SW Yamhill, #430
Portland, OR 97204

> Re:    <u>Loan No 683922001 (the "Loan") – Borrego Resort Holdings, LLC
> ("Borrower")</u>

Dear Mr. Eaton:

Builders Bank has approved your request to extend the Maturity Date of the Loan to March 5, 2008. The extension, however, is conditioned upon the following: (i) payment of an Extension Fee of $11,485.00 in two equal installments of $5,742.50 each. The first installment is due as a condition to the closing of this Extension. The second installment will be due on December 5, 2007, however, if the Loan is paid off prior to December 5, 2007, the second installment of the Extension Fee shall be waived; and (ii) re-payment of principal in monthly installments equal to $25,000.00 each, beginning on November 5, 2007 and on the fifth of every month thereafter.

All other terms and conditions of the Loan under Promissory Note Secured by Deed of Trust, dated April 14, 2005, as amended, described therein shall continue and remain in full force and effect. Please countersign and return this letter to me as soon as possible to indicate its acknowledgement of and agreement with the foregoing.

Very truly yours,

Barrett J. Schulz
Senior Vice President

AGREED AND ACKNOWLEDGED

BORREGO RESORT HOLDINGS, LLC
an Oregon limited liability company

By:    DGHD-Borrego, LLC, its manager

By:
Its:    Managing Member

Member
FDIC

tel: 312.750.9300
www.buildersbank.com



## EXHIBIT F

# **B** Builders Bank

Executive Offices
225 W. Wacker Dr.
Suite 2000
Chicago, IL 60606-1224

January 17, 2008

**VIA OVERNIGHT DELIVERY**

Borrego Resort Holdings, LLC
520 SW Yamhill, Suite 430
Portland, Oregon 97204
Attn: Lyman D. Eaton and Richard Todd

> Re:    Builders Bank Loan No. 683922001 (the "Loan")
>         APNs 773-076-002-6, 773-076-003-7, 773-076-004-8, 773-076-005-9,
>         773-076-010-3, 773-076-011-4, 773-076-012-5, 773-076-013-6
>         (collectively, the "Property")

Dear Mr. Eaton and Mr. Todd:

    Reference is hereby made to that certain Promissory Note Secured by Deed of Trust dated April 14, 2005 ("Note") by Borrego Resort Holdings, LLC, an Oregon limited liability company ("Borrower") in favor of Builders Bank ("Lender").

    **NOTICE IS HEREBY GIVEN** that Borrower is in default under the terms of the Note and other loan documents creating, evidencing, securing, guarantying or otherwise executed in connection with the Loan (collectively, the "**Loan Documents**") for, inter alia, failure to make payment of principal and interest as and when due. Lender intends to take any and all legal actions necessary to aggressively pursue its remedies under the Note and all other Loan Documents, including without limitation the Guaranties of Payment executed by Lyman Eaton, DGHD-Borrego, LLC, Richard Todd and Stephen Stoelk relating to the Loan. In accordance with the terms of the Note, the Loan began accruing interest at the Default Rate (as defined in the Note) on January 6, 2008. In addition, a late fee in the amount of $1254.06 is now due and owing.

Sincerely,

**BUILDERS BANK**

Barrett J. Schulz
Senior Vice President

cc:    Bertoni & Todd
       520 SW Yamhill, Suite 430
       Portland, Oregon 97204
       Attn: Richard Todd



<u>**EXHIBIT G**</u>

# B: Builders Bank

Executive Offices
225 W. Wacker Dr.
Suite 2000
Chicago, IL 60606-1224

February 4, 2008

## VIA OVERNIGHT DELIVERY

Borrego Resort Holdings, LLC
9999 Hamilton Hills
Fishers, Indiana 46038
Attn: Lyman D. Eaton

     Re:    **Builders Bank Loan No. 683922001 (the "Loan")**
              **APNs 773-076-002-6, 773-076-003-7, 773-076-004-8, 773-076-005-9,**
              **773-076-010-3, 773-076-011-4, 773-076-012-5, 773-076-013-6**
              **(collectively, the "Property")**

Dear Mr. Eaton:

    Reference is hereby made to that certain Promissory Note Secured by Deed of Trust dated April 14, 2005 ("Note") by Borrego Resort Holdings, LLC, an Oregon limited liability company ("Borrower") in favor of Builders Bank ("Lender"):

    As evidenced by the Notice of Default dated January 17, 2008, Lender has declared an Event of Default under the terms of the Note and other loan documents creating, evidencing, securing, guarantying or otherwise executed in connection with the Loan (collectively, the "**Loan Documents**"). Pursuant to the Loan Documents, the Loan **IS HEREBY ACCELERATED AND IMMEDIATELY DUE AND PAYABLE IN FULL.** The entire principal balance of the Loan is accruing interest at the Default Rate (as defined in the Note) from and after the date hereof. Moreover, Lender intends to take any and all legal actions necessary to aggressively pursue its remedies under the Note and all other Loan Documents, including without limitation the Guaranties of Payment executed by Lyman Eaton, DGHD-Borrego, LLC, Richard Todd and Stephen Stoelk relating to the Loan.

              Sincerely,

              **BUILDERS BANK**

              Barrett J. Schulz
              Senior Vice President

cc:    Todd & Shannon
       516 SE Morrison Street
       930 Weatherly Building
       Portland, Oregon 97214
       Attn: Richard Todd

Member
FDIC

tel: 312.750.9300
www.buildersbank.com


EQUAL HOUSING
LENDER

# EXHIBIT H

# Builders Bank

Executive Offices
225 W. Wacker Dr.
Suite 2000
Chicago, IL 60606-1224

February 19, 2008

### VIA OVERNIGHT DELIVERY

Borrego Resort Holdings, LLC
9999 Hamilton Hills
Fishers, Indiana 46038
Attn: Lyman D. Eaton

> **Re:** **Builders Bank Loan No. 683922001 (the "Loan")**
> APNs 773-076-002-6, 773-076-003-7, 773-076-004-8, 773-076-005-9,
> 773-076-010-3, 773-076-011-4, 773-076-012-5, 773-076-013-6
> (collectively, the "**Property**")

Dear Mr. Eaton:

Reference is hereby made to that certain Promissory Note Secured by Deed of Trust dated April 14, 2005 ("**Note**") by Borrego Resort Holdings, LLC, an Oregon limited liability company ("**Borrower**") in favor of Builders Bank ("**Lender**").

As evidenced by the Notice of Default dated January 17, 2008, Lender has declared an Event of Default under the terms of the Note and other loan documents creating, evidencing, securing, guarantying or otherwise executed in connection with the Loan (collectively, the "**Loan Documents**"). In addition, Lender accelerated the Loan by Notice of Acceleration dated February 4, 2008. As a result of a recent title search of the Property, however, we have become aware of an addition, earlier, default of Borrower under Section 14 of the Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Filing dated April 14, 2005 for a Prohibited Transfer (see the attached title report showing an additional deed of trust encumbering the Property). In accordance with the terms of the Note, the Loan began accruing interest at the Default Rate (as defined in the Note) on June 25, 2007, the date of the Prohibited Transfer.

Sincerely,

**BUILDERS BANK**

Barrett J. Schulz
Senior Vice President

cc:   Todd & Shannon
      516 SE Morrison Street
      930 Weatherly Building
      Portland, Oregon 97214
      Attn: Richard Todd

Member
FDIC

tel: 312.750.9300
www.buildersbank.com